1

2

3

4

5

6

7

8                    UNITED STATES DISTRICT COURT

9                    EASTERN DISTRICT OF CALIFORNIA

10
                          ----oo0oo----
11

12   AMERICAN NATIONAL RED CROSS, a
     non-profit corporation created
13   by an act of Congress,
                                    NO. CIV. S-07-1236 WBS DAD
14        Plaintiff,
                                    ORDER RE: MOTIONS TO EXPUNGE
15     v.                           NOTICE OF PENDENCY OF ACTION
                                    AND DISMISS; REQUEST FOR
16                                  PRELIMINARY INJUNCTION
     UNITED WAY CALIFORNIA CAPITAL
17   REGION, a California corporation;
     APIP 220, LLC, a California
18   limited liability company; VOLEN
     PROPERTIES 10, LLC, a California
19   limited liability company; and DOES
     1-10, inclusive,
20
          Defendants.
21

22

23                        ----oo0oo----

24        Plaintiff, the Sacramento-Sierra Chapter of the

25   American National Red Cross ("Red Cross"), brought this action

26   seeking confirmation of a contractual option to purchase an

27   ownership interest in the property it leases from defendant Volen

28   Properties 10, Inc. ("Volen").  Before this court are (1) Volen's

                                  1

1   motion to expunge the lis pendens; (2) Volen's motion to dismiss

2   for failure to state claim upon which relief may be granted; and

3   (3) Red Cross's request for a preliminary injunction.

4   I.   <u>Factual and Procedural Background</u>

5          Beginning in 1988, Red Cross leased a 26,099-square-

6   foot building, located at 8928 Volunteer Lane in Sacramento

7   ("building"), as well as a pro rata share of the property's

8   common areas. (Pl.'s First Am. Compl. ("FAC") Ex. A.)  At that

9   time and continuing until May 3, 2007, the building was located

10  on a parcel that had a second building on it. (Def.'s Request

11  for Judicial Notice Ex. A.)

12         In recognition of Red Cross's contributions to the

13  community, the original lessor, O.K. and B, agreed to donate the

14  building to Red Cross at the end of the twenty-year lease. (Van

15  Dooren Decl. Ex. B ("Agreement to Donate").)  The Agreement to

16  Donate anticipated that the parcel had to be subdivided into two

17  parcels, with one building on each parcel, before title could be

18  transferred to Red Cross. (Agreement to Donate ¶ 5.6.)  O.K. and

19  B later sold the property to California Center, who subsequently

20  sold it to co-defendant United Way California Capital Region

21  ("United Way") on April 7, 1994. (FAC Ex. C.)

22         When California Center sold the property to United Way,

23  the parties executed a Second Amendment, which terminated the

24  Agreement to Donate and created, in Red Cross, an option to

25  purchase the property for $1.00 on April 10, 2010. (<u>Id.</u> Ex. D.)

26  The Second Amendment incorporated the terms of the Agreement to

27  Donate as the terms for the sale if Red Cross exercised its

28  option. (<u>Id.</u>)

On July 1, 1996, United Way and Red Cross executed a Third Amendment, which reduced Red Cross's lease from the entire two-story building to only the first floor. (Id. Ex. E.) Based on its square footage, the first floor comprises of exactly 48.87% of the building. (Id.) Red Cross's rent, as well its tax, maintenance, and utilities expenses, were also reduced to 48.87% of their previous amounts. (Id.) As of August 1, 2001, Red Cross's option to purchase was automatically amended, via the Third Amendment, to an option to purchase only a 48.87% ownership interest in the building. (Id. ¶ 3.5.)

Beginning in approximately mid-2006, Red Cross began to question the veracity of the expenses and taxes United Way charged. (Id. ¶ 29.) Red Cross requested documentation to support the charges, and it asserts that United Way refused to provide such documentary support. (Id. ¶ 30.)

On May 3, 2007, at the request of United Way, the County of Sacramento issued a Certificate of Compliance for the subdivision of the lot the building was on.[1] (Def.'s Request for Judicial Notice Ex. A.) About one month later, Red Cross learned that United Way intended to sell the building under the position that Red Cross could not exercise its option. (FAC ¶ 23.)

---

[1]   The County of Sacramento issued the Certificate of Compliance pursuant to section 66428 of the California Government Code, which allows a local agency to waive the requirements for a parcel map. Cal. Gov't Code § 66428; see also Cal. Gov't Code § 66499.35 ("The certificate of compliance shall identify the real property and shall state that the division thereof complies with applicable provisions of this division and of local ordinances enacted pursuant thereto."). It is unclear whether Volen is arguing that the Certificate of Compliance would be insufficient under the Agreement to Donate if it was recorded before the option was granted. (Def.'s Mot. to Expunge 6:18-19; 7:20-21.)

On June 25, 2007, Red Cross filed suit, alleging: 1) breach of contract--refusal to provide short form memorandum of lease; 2) breach of contract--refusal to provide a tentative parcel map for Red Cross's approval; 3) accounting; and 4) declaratory relief.  On the same day, Red Cross also recorded a Notice of Pendency of Action, alleging its right to purchase 48.87% of the building in 2010.  In early June of 2007, after learning Volen was the potential buyer, Red Cross sent a letter to Volen that detailed Red Cross's position about its option to purchase.  (Wilcox Decl. Ex. A.)

After Volen inspected the property, (Van Dooren Decl. ¶ 7), United Way sold the property on September 12, 2007 to APIP 220, LLC ("APIP 220"), which transferred it to Volen sixteen days later.  (Def.'s Req. for Judicial Notice Exs. B & C.)  Red Cross subsequently amended its complaint, adding Volen as a defendant in this action.

On September 20, 2007, Volen demanded that Red Cross vacate the first-floor lobby, which Red Cross had been using as its reception area, and subsequently demanded that Red Cross remove or replace its exterior signs.  (Van Dooren Decl. ¶ 10-11, 19.)  Volen also began renovating the second floor of the building and first-floor lobby, which created noise, fumes, debris, and dust that Red Cross considers unacceptable.  (Van Dooren Decl. ¶ 9.)  Volen also enacted new rules and regulations, which, in part, prohibited overnight parking, restricted access to the building at certain hours, charged for after-hours HVAC use, prohibited moving equipment into the building, banned soliciting and distributing written materials, and required

4

1  Volen's permission to maintain vending machines in the building.

2  (Volen Decl. ¶ Ex. B.)  Disagreements about the new rules and

3  Volen's demands continued and Red Cross began to fear that Volen

4  was trying to force Red Cross to terminate the lease or default

5  on it.  (Pl.'s Reply in Supp. of App. for TRO 1:8-9.)

6         On November 8, 2007, Red Cross moved for a preliminary

7  injunction prohibiting Volen from disturbing Red Cross's status

8  quo operations with the conduct described above.  The following

9  day, Volen moved to expunge the lis pendens and dismiss Red

10  Cross's complaint for failure to state a claim.  Volen bases both

11  motions primarily on its contention that Red Cross's option to

12  purchase is invalid.  Volen and Red Cross also request attorneys'

13  fees and costs incurred because of the motion to expunge.

14  II.  <u>Discussion</u>

15       A.   <u>Motion to Expunge Lis Pendens</u>

16         "'A lis pendens is a recorded document giving

17  constructive notice that an action has been filed affecting title

18  to or right to possession of the real property described in the

19  notice.'"  <u>Kirkeby v. Superior Court</u>, 33 Cal. 4th 642, 647 (2004)

20  (quoting <u>Urez Corp. v. Superior Court</u>, 190 Cal. App. 3d 1141,

21  1144 (1987)).  "At any time after notice of pendency of action

22  has been recorded, any party, . . . may apply to the court in

23  which the action is pending to expunge the notice."  Cal. Civ.

24  Proc. Code § 405.30.  The court shall expunge the lis pendens

25  unless 1) plaintiff's pleading contains a real property claim;

26  and 2) plaintiff proves, by a preponderance of the evidence, the

27  probable validity of plaintiff's real property claim.  <u>Id.</u> at §§

28  405.3 ("Probable validity . . . means that it is more likely than

5

1  not that the claimant will obtain a judgment against the
2  defendant on the claim"); 405.31 (establishing when a court shall
3  expunge a lis pendens); 405.32 (establishing the standard of
4  proof); see also 28 U.S.C. § 1964 (directing federal courts to
5  apply the state's lis pendens law).

6          1.   Real Property Claim

7          For purposes of a lis pendens, a real property claim is
8  one that would, "if meritorious, affect (a) title to, or the
9  right to possession of, specific real property or (b) the use of
10 an easement identified in the pleading . . . ." Cal. Civ. Proc.
11 Code § 405.4.  To determine if plaintiff asserts a real property
12 claim, the court looks only to plaintiff's pleading.  Kirkeby, 33
13 Cal. 4th at 648, 651.  A claim that seeks an actual interest in
14 the property or that "affects ownership of the disputed property"
15 is a real property claim.  Campbell v. Superior Court, 132 Cal.
16 App. 4th 904, 913 (2005); see also Kirkeby, 33 Cal. 4th at 649.
17 A claim that seeks "an interest in real property merely for the
18 purpose of securing a money damage judgment" is not a real
19 property claim.  See, e.g., Campbell, 132 Cal. App. 4th at 912,
20 914 (2005) (it is improper to use a lis pendens as a tool to
21 secure a debt against a defendant).

22          In its first amended complaint (FAC), Red Cross
23 requests this court to declare "the existence of the Red Cross's
24 option in a document that the Red Cross can record with the
25 Sacramento County Recorder and thereby provide notice of the Red
26 Cross's exercise of its option to purchase 48.87% of the
27 Building." (FAC 19:15-53.)  The court disagrees with Volen's
28 argument that Red Cross's claim regarding the option to purchase

6

does not "affect title, or the right of possession of, specific real property."  Cal. Gov't Code § 405.4.

When included in a lease, an option to purchase is an indefeasible right.  Joaquin v. Joaquin, 193 Cal. App. 3d 1529, 1532-33 (1987).  It is also a real covenant that runs with the land.  Chapman v. Great W. Gypsum Co., 216 Cal. 420, 426 (1932). Upon exercising the option, the optionee gains an ownership interest that can be enforced by specific performance.  Joaquin, 193 Cal. App. 3d at 1533.  The optionee's  ownership of the property also relates back to the time the option was acquired. Claremont Terrace Homeowners' Ass'n v. U.S., 146 Cal. App. 3d 398, 407-08 (1983); Joaquin, 193 Cal. App. 3d at 1533; Anthony v. Enzler, 61 Cal. App. 3d 872, 877 (1976); see also Allen v. Chatfield, 172 Cal. 60, 66, 69 (1916) (an option creates a "cloud" on title that can render title unmarketable).  Therefore, a judgment enforcing Red Cross's option to purchase will clearly affect title to the real property at issue.

Allowing Red Cross's lis pendens to remain is also consistent with the main purpose of the lis pendens statute, which is to "preserve the court's jurisdiction over the property."  Lewis v. Superior Court, 30 Cal. App. 4th 1850, 1860 (1994).  In this case, if Red Cross has a valid option, a subsequent purchaser who has notice of its option would take title subject to the option; however, a subsequent purchaser who takes title without notice would prevail over Red Cross.  Utley v. Smith, 134 Cal. App. 2d 448, 451 (1955).  Filing a lis pendens would give notice to potential purchasers and ensure that a subsequent transfer of the property could not frustrate a

7

1  judgment in favor of Red Cross.   Lewis, 30 Cal. App. 4th at 1860.

2              2.   Probable Validity of Claim

3         In the second inquiry, Red Cross must prove, by a

4  preponderance of the evidence, that it is more likely than not

5  that it will prevail on its real property claim.   To determine

6  the probable validity of a real property claim, the court must

7  look beyond the plaintiff's pleadings and examine the factual

8  merit of the claim.   Kirkeby v. Superior Court, 33 Cal. 4th 642,

9  648, 651 (2004); Cal. Civ. Proc. Code § 405.30.   In its inquiry,

10 the court may examine declarations and oral testimony and "make

11 any orders it deems just to provide for discovery by any party

12 affected by a motion to expunge the notice."   Cal. Proc. Code §

13 405.30; Howard S. Wright Constr. Co. v. Superior Court, 106 Cal.

14 App. 4th 314, 319 (2003).

15             a.   Section 66499.30(e): Offer Expressly

16                  Conditioned

17        To be valid, Red Cross's option must comply with

18 section 66499.30 of the SMA.   Section 66499.30(b) prohibits the

19 sale of real property "for which a parcel map is required by [the

20 SMA] or local ordinance" before the required map is recorded.

21 Cal. Gov't Code § 66499.30(b).   Section 66499.30(e) allows,

22 however, an "offer or contract to sell" real property prior to

23 the recording of the requisite parcel map if the offer or

24 contract is "expressly conditioned upon the approval and filing

25 of a final subdivision or parcel map."[2]   Cal. Gov't Code §

26

27        [2]   In its entirety, section 66499(e) provides: "Nothing
   contained in subdivisions (a) and (b) shall be deemed to prohibit
28 an offer or contract to sell, lease, or finance real property or

66499(e); see also Black Hills Invs., Inc. v. Albertson's, Inc., 146 Cal. App. 4th 883, 892-95 (2007).  To be valid under the SMA, the Second Amendment to the lease, which terminated the Agreement to Donate and created Red Cross's option to purchase,[3] must comply with the exception under section 66499(e).  See Bekins Moving & Storage Co. v. Prudential Ins. Co. of Am., 176 Cal. App. 3d 245, 250 (1985) (an option is an irrevocable offer).

The Agreement to Donate states that recording the parcel map is a condition precedent to the close of escrow, which is required to occur before the sale can be completed. (Agreement to Donate ¶ 5.1 ("The provisions of this Paragraph 5 are conditions precedent to the CLOSE OF ESCROW and unless otherwise provided expressly or by context, are covenants.")); Cal. Civil Code § 1436 (defining condition precedent); U.S. v. Schaeffer, 319 F.2d 907, 911 (9th Cir. 1963).  In the Agreement to Donate, the seller also promises to record the map, which means the seller would be in breach if it does not do so. (Agreement to Donate ¶ 5.6); Britschgi v. McCall, 41 Cal. 2d 138, 144 (1953); see generally 1 Wikin Summary of California Law § 775 (10th ed. 2005) (distinguishing between conditions and covenants). Therefore, because recording the map is both a condition precedent and a covenant, the seller's failure to record it prior

---

to construct improvements thereon where the sale, lease, or financing, or the commencement of construction, is expressly conditioned upon the approval and filing of a final subdivision map or parcel map, as required under this division." Cal. Gov't Code § 66499.30(e).

[3]     The Second Amendment incorporated the terms from the Agreement to Donate as the terms for the option to purchase. (FAC Ex. D.)  The court will substitute "seller" for "donor" and "buyer" for "donee" when discussing the Agreement to Donate.

1  to the sale would put the seller in breach and entitle the buyer
2  to sue for breach of contract.

3        Analogizing to a contract that was void because it
4  violated the SMA, Volen argues that the option does not come
5  within 6499(e). <u>Black Hills</u>, 146 Cal. App. 4th at 894.  In <u>Black</u>
6  <u>Hills</u>, however, recording the map was a condition precedent, but
7  was not a covenant. <u>Id.</u> at 893.  The <u>Black Hills</u> contract gave
8  the seller "the right to terminate the contract 'without
9  liability' in the event [that the seller], before the closing
10 date, either (1) failed to obtain governmental approval of the
11 creation of the two parcels, or (2) 'waived' the condition in
12 writing." <u>Id.</u>  Under that language, if the seller failed to
13 perform the condition and did not waive it, the buyer's
14 performance would be excused, but the buyer would have no
15 recourse against the seller. <u>Kadner v. Shields</u>, 20 Cal. App. 3d
16 251, 258 (1971); <u>Britschgi</u>, 41 Cal. 2d at 144.  Because the
17 seller did not covenant to record the map and had the sole
18 discretion to determine whether it would record the map, the sale
19 was clearly not "expressly conditioned" on that act. <u>Black</u>
20 <u>Hills</u>, 146 Cal. App. 4th at 893-94.  The contract was also void
21 at the time it was executed because, by allowing the seller to
22 waive the SMA requirements, the contract permitted a sale that
23 would be illegal under the SMA. <u>Id.</u>

24       Unlike <u>Black Hills</u>, the Agreement to Donate does not
25 give Red Cross the ability to waive the SMA requirements.  The
26 language in the Agreement to Donate underscores that the sale is
27 "expressly conditioned" on the recording of the map:

28       The parties acknowledge that approval and recordation of

1    a final parcel map ("FINAL MAP") <u>must</u> occur before the
2    property may legally be conveyed; . . . . Upon execution
     of this AGREEMENT, [seller] <u>will</u>, . . . promptly apply
3    for, and diligently take all reasonable and necessary
     steps to obtain, approval and recordation of the FINAL
4    MAP [that divides the property and complies with the
     SMA].

5    (Agreement to Donate ¶ 5.6 (emphasis added).)

6          Defendant also argues that the option is invalid

7    because Red Cross "has the right to approve or disapprove of the

8    conditions" of the parcel map in violation of the SMA.  (Def.'s

9    Mem. 7:8, 13-15.)  In the Agreement to Donate, paragraph 5.6(b)

10   requires the seller to give Red Cross ten days to review and

11   "reasonably object" to a Tentative Parcel Map, and if Red Cross

12   fails to respond within ten days, its "silence shall be deemed

13   approval thereof."  (Agreement to Donate ¶ 5.6(b).)  Paragraph

14   5.6(c) also gives Red Cross "reasonable approval" over

15   "conditions imposed by any applicable government entity regarding

16   the subdivision."  (Agreement to Donate ¶ 5.6(c).)

17         The rights of approval in the Agreement to Donate in

18   this case, however, are distinguishable from the invalid approval

19   rights in <u>Black Hills</u>.  First, the power of approval in the

20   Agreement to Donate does not amount to the power to waive the

21   requirements of the SMA, which the court found fatal in the <u>Black</u>

22   <u>Hills</u> contract.  <u>Black Hills</u>, 146 Cal. App. 4th at 893-94.

23   Second, the seller's approval in <u>Black Hills</u> was within its "sole

24   discretion," whereas Red Cross must be reasonable.  <u>Id.</u>  This

25   merely gives Red Cross, as a future owner of one of the parcels,

26   the right to object to an unreasonable division of the property.

27   It does not, however, give it the power to waive or ignore the

28   SMA.

                                   11

1          Therefore, Red Cross's option comes within the

2     exception in section 66499(e) and does not violate the SMA.[4]

3                    b.   Termination of Option

4          Volen also argues Red Cross will not prevail on its

5     option claim because the option terminated when United Way sold

6     the property to Volen on October 10, 2007.  To determine whether

7     the option survived the sale, the court must interpret the

8     following two paragraphs from the Third Amendment to the Lease:

9          3.5  If Lessee does not exercise Lessee's option to
          reinstate Lessee's original leasehold interest in the
10         second floor of the Building on or before June 30, 2001,
          Lessee's option to purchase the Building pursuant to
11         Section 8 of the Second Amendment shall automatically be
          amended, giving Lessee an option to purchase a 48.87
12         percent ownership interest in the Building as of April
          30, 2010 on the terms otherwise specified in Section 8 of
13         the Second Amendment.

14         4.  Sale of Building.   If Lessor enters into an
          agreement to sell the Building before the earlier of (I)
15         the date Lessee reinstates Lessee's original leasehold
          interest in the second floor of the Building pursuant to
16         Section 3, above, or (ii) June 30, 2001, the Lease shall
          automatically terminate as of the close of escrow and
17         Lessee shall have four (4) months after the close of
          escrow to vacate the Premises.  In the event of any sale
18         of the Building by Lessor, (a) Lessor shall bear any and
          all loss on sale, (b) Lessor shall receive all gain on
19         sale up to an amount equal to Out-of-Pocket Expenses and
          (c) Lessor and Lessee shall share any gain on sale, over
20         and above the amount described in subparagraph (b),
          above, in the following percentages: 51.13 percent and
21         48.87 percent, respectively.

22    _____

23         [4]     Volen also argues that, even if the option to purchase
      is "expressly conditioned" on the seller recording the parcel
24    map, the seller's failure to have done so by now violates the SMA
      and renders the contract void as a matter of law.  (Def.'s Mem.
25    6:18-21.)  On the other hand, Red Cross argues that, even if the
      offer is not expressly conditioned on the seller recording the
26    parcel map, when the option is exercised on April 10, 2007, the
      Certificate of Compliance will have subdivided the property as
27    section 66499.30(b) requires.  (Pl.'s Mem. 8:11-12.)  Neither of
      these arguments are consistent with section 66499(e).  Cal. Gov't
28    Code § 66499(e).

                                    12

(FAC Ex. E.)  Neither party disputes that the Third Amendment reduced Red Cross's option to purchase from the entire building to 48.87% of the building.  The parties do dispute, however, the consequence of United Way's sale of the property to Volen under the Third Amendment.  Three possibilities exist: 1) the option to purchase terminated when the property was sold and Red Cross was entitled to 48.87% of the proceeds; 2) the option to purchase survived the sale and Red Cross is not entitled to any proceeds from the sale; or 3) the option to purchase survived the sale and Red Cross is entitled to 48.87% of the proceeds from the sale.  Because Red Cross's could not prevail on its option to purchase claim under the first possibility, Red Cross must prove, by a preponderance of the evidence, that the second or third possibility is more likely than not.

The sale to Volen, alone, could not have terminated Red Cross's option because an "unexercised option to purchase contained in a lease constitutes a covenant running with the land. . . . Subsequent purchasers of property subject to an option who take with notice of its existence take subject to the right of the optionee to complete the purchase."  Claremont Terrace Homeowners' Ass'n v. U.S., 146 Cal. App. 3d 398, 406 (1983).  In this case, however, the Agreement to Donate establishes that Red Cross's option would "automatically terminate upon the termination of the LEASE."  (Agreement to Donate ¶ 10.)  Under the first sentence of paragraph 4 of the Third Amendment, the option to purchase would have terminated if United Way sold the property before June 30, 2001 because the lease would have terminated as a result of a sale before that

date.  United Way did not, however, sell the property before that date.

With a sale after June 30, 2001, the contract is silent as to whether the option would terminate.  Pointing to the second sentence of paragraph four, Volen argues that the sale to Volen extinguished the option because the second sentence entitles Red Cross to 48.87% of the proceeds of "any" sale.  Volen argues that, "[t]o interpret the Third Amendment to Lease to require a distribution to the Red Cross from the net sales proceeds and also allow the subsequent exercise of the option would 'involve an absurdity' in the form of double compensation, in violation of Civil Code § 1638."  (Def.'s Mem. 8:12-14.)  According to Volen, the parties must have intended any sale to terminate the option.

While Volen's interpretation is plausible when the second sentence is read in isolation, "[t]he whole of a contract is to be taken together, so as to give effect to every part, if reasonably practicable, each clause helping to interpret the other."  Cal. Civil Code § 1641; see also Bank of the W. v. Superior Court, 2 Cal. 4th 1254, 1265 (1992) and Southgate Recreation & Park Dist. v. Cal. Ass'n for Park & Recreation Ins., 106 Cal. App. 4th 293, 298 (2002).  Because the second sentence immediately follows the sentence establishing that the option would terminate if the property is sold before June 30, 2001, the most plausible interpretation is that parties intended the second sentence to read, "In the event of any sale before June 30, 2001 of the Building . . . ."

Reading the second sentence as applying to "any" sale regardless of the date would also be inconsistent with the

preceding paragraphs in the Third Amendment.  Specifically, in

paragraphs 3.1-3.5, Red Cross is given the option to reinstate

the lease for both floors of the building and, if it declined to

do so before June 30, 2001, its option to purchase would be

reduced to an option to purchase a 48.87% ownership in the

building.  (Agreement to Donate ¶¶ 3.1-3.5.)  Under Volen's

interpretation, if Red Cross reinstated the lease to include the

entire building, paragraph 3.5 would entitle it to an option to

purchase the entire building, but the second sentence in

paragraph four would entitle it to only to 48.87% of the

proceeds.

Accordingly, because it is more likely than not that

Red Cross's option is valid and survived the sale to Volen, Red

Cross has established the probable validity of its real property

claim.[5]

### 3.    Attorneys' Fees and Costs

California Civil Procedure section 405.38 requires the

court to award reasonable attorneys' fees and costs to the

prevailing party on a motion to expunge, "unless the court finds

---

[5]    In its reply brief, Volen raised an entirely new
argument against the validity of the option to purchase.  Volen
argues that the option is invalid because it does not contain a
sufficient description of the real property and leaves the
determination of the exact parcel to be conveyed to future
negotiation.  (Def.'s Reply 1-5, 10.)  The court will not
consider Volen's argument because plaintiff, who carries the
burden of proof on this motion, did not have the opportunity to
respond.  If Volen wants to pursue the argument, it must file
another motion raising the issue; however, the parties are
cautioned against filing too many successive motions.  Zaldivar
v. City of Los Angeles, 780 F.2d 823, 832 n.10 (9th Cir. 1986)
("The filing of excessive motions, for example, even if each is
well grounded in fact and law, may under particular circumstances
be 'harassment' under Rule 11 or sanctionable under some other
provision of law . . . .").

that the other party acted with substantial justification or that other circumstances make the imposition of attorney's fees and costs unjust." Cal. Civ. Proc. Code § 405.38. Red Cross is the prevailing party and has requested $8,869.50 in attorneys' fees and costs to oppose Volen's motion to expunge.

As originally enacted, section 405.38 granted courts the discretion to determine whether to award fees; however, the California Legislature amended the statute in 1992 to "make an award of attorney fees mandatory" unless the court finds that one of the two aforementioned exceptions applies. <u>Castro v. Superior Court</u>, 116 Cal. App. 4th 1010, 1018 (2004). Because denying fees to the prevailing party is the exception, not the rule, Volen has the burden of convincing the court that it "acted with substantial justification." <u>See</u> <u>Cal. Shellfish, Inc. v. United Shellfish Co.</u>, 56 Cal. App. 4th 16, 25 (1997) (holding that the losing party has the burden to show "substantial justification" under a discovery sanction statute, which uses the same language as section 405.38).

From the plain language of the statute and the legislative intent favoring an award of fees, one might think that in order to defeat a motion for attorneys fees the courts would require the losing party to make something more than the minimal showing that is required to defeat a motion for sanctions under Federal Rule of Civil Procedure 11.[6]  For example, in order

---

[6]    Rule 11 provides:
(b) **Representations to the Court.** By presenting to the court a pleading, written motion, or other paper--whether by signing, filing, submitting, or later advocating it--an attorney or unrepresented party certifies that to

to show that it acted with "substantial justification," the losing party might be required to show that its position had a "high probability" or "strong likelihood" of success.  Instead, the California courts applying the same language used in section 405.38 seem to have taken the teeth out of "substantial justification" by requiring the losing party to show only that it acted "reasonably."

Specifically, "California cases have defined a 'substantially justified' position to mean one which is justified to a degree that would satisfy a reasonable person." Wertin v. Franchise Tax Bd., 68 Cal. App. 4th 961, 977 (1998); see also

---

the best of the person's knowledge, information, and belief, formed after an inquiry reasonable under the circumstances:

(1) it is not being presented for any improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation;

(2) the claims, defenses, and other legal contentions are warranted by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law or for establishing new law;

(3) the factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery; and

(4) the denials of factual contentions are warranted on the evidence or, if specifically so identified, are reasonably based on belief or a lack of information.

(c) **Sanctions. _(1) In General._** If, after notice and a reasonable opportunity to respond, the court determines that Rule 11(b) has been violated, the court may impose an appropriate sanction on any attorney, law firm, or party that violated the rule or is responsible for the violation. Absent exceptional circumstances, a law firm must be held jointly responsible for a violation committed by its partner, associate, or employee.

F. R. Civ. P. 11(b)-(c) (emphasis in original).

1   U.S. v. Marolf, 277 F.3d 1156, 1161 (9th Cir. 2002) (applying the

2   same standard for "substantial justification" in federal

3   statutes); Pierce v. Underwood, 487 U.S. 552, 565 (1988) ("[A]s

4   between the two commonly used connotations of the word

5   "substantially," the one most naturally conveyed . . . is not

6   'justified to a high degree,' but rather, 'justified in substance

7   or in the main'--that is, justified to a degree that could

8   satisfy a reasonable person.").

9         Thus, the court cannot award Red Cross its fees if

10  Volen shows that, under the "totality of the circumstances,"

11  Fujitsu IT Holdings, Inc. v. Franchise Tax Bd., 120 Cal. App. 4th

12  459, 488 (2004), it had a "reasonable basis in law and fact" in

13  moving to expunge the lis pendens. Wertin, 68 Cal. App. 4th at

14  977. The test, therefore, as applied by the courts, is

15  tantamount to requiring the court to find that no reasonable

16  litigant would have moved to expunge the lis pendens.  If this is

17  any different than the minimal showing which a party must make in

18  order to avoid Rule 11 sanctions, it is at best difficult to

19  articulate and even harder to apply.[7]

20        Volen's first argument, that Red Cross's claim to

21  establish the validity of its option to purchase is not a real

22  property claim, was clearly unreasonable because it ignores the

23  _____

24        [7]    See, e.g., Hudson v. Moore Bus. Forms, Inc., 836 F.2d
    1156, 1159 (9th Cir. 1988) ("The new standard for appraising the
25  actions of a signing attorney is one of objective reasonableness
    under the circumstances.") (citations omitted); see also Castro
26  v. Superior Court, 116 Cal. App. 4th 1010, 1023 n.13 (2004)
    ("[t]he discretionary language in section 405.38 is similar to
27  the discretionary standard for awarding discovery sanctions"
    because section 405.38 and California discovery sanctions
28  statutes use the same language to create the two exceptions).

precise nature of an option to purchase real property.  However, with its second argument, that Red Cross cannot show it is more likely than not to prevail on its option claim, the court cannot find that no reasonable litigant would have attacked a plaintiff's ability to prove its case.  Specifically, while Volen's use of <u>Black Hills</u> ignored dispositive differences between the contract in that case and the Agreement to Donate, and Volen's interpretation of the Agreement to Donate is plausible only if the remainder of the contract is ignored, the court cannot find that the arguments are entirely unreasonable.

Therefore, because the court cannot find that Volen moved to expunge the lis pendens without substantial justification as that term is interpreted by the California courts the court must deny Red Cross its fees.

B.   <u>Motion to Dismiss</u>

On a motion to dismiss, the court must accept the allegations in the complaint as true and draw all reasonable inferences in favor of the pleader.  <u>Scheuer v. Rhodes</u>, 416 U.S. 232, 236 (1974); <u>Cruz v. Beto</u>, 405 U.S. 319, 322 (1972).  To survive a motion to dismiss, a plaintiff needs to plead "only enough facts to state a claim to relief that is plausible on its face." <u>Bell Atl. Corp. v. Twombly</u>, 127 S. Ct. 1955, 1974 (2007). Dismissal is appropriate, however, where the pleader fails to state a claim supportable by a cognizable legal theory. <u>Balistreri v. Pacifica Police Dep't</u>, 901 F.2d 696, 699 (9th Cir. 1988); <u>see also</u> <u>Conley v. Gibson</u>, 355 U.S. 41, 47 (1957) (complaint must "give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests").

19

1  "However, the court is not required to accept legal conclusions

2  cast in the form of factual allegations if those conclusions

3  cannot reasonably be drawn from the facts alleged." <u>Clegg v.</u>

4  <u>Cult Awareness Network</u>, 18 F.3d 752, 754-55 (9th Cir. 1994).

5       In general, the court may not consider material other

6  than the facts alleged in the complaint when ruling on a motion

7  to dismiss.  <u>Anderson v. Angelone</u>, 86 F.3d 932, 934 (9th Cir.

8  1996).  The court may, however, consider materials that are

9  "properly submitted as part of the complaint." <u>Hal Roach</u>

10 <u>Studios, Inc. v. Richard Feiner & Co., Inc.</u>, 896 F.2d 1542, 1555

11 n.19 (9th Cir. 1990).  In deciding this motion, the court

12 considers the original lease between the parties, the Agreement

13 to Donate, and the First, Second, and Third Amendments to the

14 Lease because each are included as exhibits in Red Cross's FAC.

15 The court may also consider materials of which it may take

16 judicial notice, including matters of public record.  <u>Mir v.</u>

17 <u>Little Co. of Mary Hosp.</u>, 844 F.2d 646, 649 (9th Cir. 1988); Fed.

18 R. Evid. 201(b) (defining the scope of judicial notice).

19 Accordingly, the court takes judicial notice of the Certificate

20 of Compliance issued on May 3, 2007, the Grant Deed conveying the

21 property from United Way to APIP 220, and the Grant Deed

22 conveying the property from APIP 220 to Volen.  (Def.'s Req. for

23 Judicial Notice Exs. A-C.)

24       1.   <u>First and Fourth Causes of Action</u>

25       In its First and Fourth Causes of Action, Red Cross

26 seeks a memorandum of lease and a declaratory judgment to

27 establish the validity of its option to purchase.  Unlike Red

28 Cross's burden of proving the probable validity of those claims

1   to survive Volen's motion to expunge the lis pendens, Red Cross

2   need only prove that the claims are plausible on their face to

3   survive Volen's motion to dismiss.  In support of its motion to

4   dismiss the claims regarding the option to purchase, Volen's

5   arguments are the same as in its motion to expunge the lis

6   pendens.  Therefore, because the court concludes Red Cross is

7   more likely than not to prevail on its option to purchase claims

8   in the above analysis, Volen's motion to dismiss the First and

9   Fourth Causes of Action must be denied.

10              2.   Second and Third Causes of Action

11          In the Second Cause of Action, Red Cross seeks damages

12  from United Way for United Way's subdivision of the property

13  without Red Cross's approval.  In the Third Cause of Action, Red

14  Cross seeks an accounting from United Way and a constructive

15  trust on any overpaid funds.  In both causes of action, Red Cross

16  does not mention Volen; however both claims are against

17  "defendants."  (FAC 13, 15.)

18          In arguing that the claims are properly asserted

19  against Volen, Red Cross first draws the court's attention to

20  paragraph 14 of its complaint, which alleges that an agency

21  relationship existed between United Way and Volen.  The FAC does

22  not, however, allege one fact that suggests such an agency

23  relationship.  This bare legal conclusion is not sufficient to

24  withstand a motion to dismiss.  Clegg v. Cult Awareness Network,

25  18 F.3d 752, 754-55 (9th Cir. 1994).

26          Second, Red Cross argues that, under the terms of the

27  lease, the lease "could be interpreted to render Volen liable to

28  Red Cross under the Red Cross's breach of contract and/or

21

accounting claims, in addition or alternatively to United Way."

(Pl.'s Opp'n 15:15-18.)   The relevant paragraph from the lease

states:

> Lessor's Liability: The term "Lessor" as used herein shall mean only the owner or owners <u>at the time in question</u> of the fee title or a lesee's interest in a ground lease of the Premises, and except as expressly provided in Paragraph 15, <u>in the event of any transfer of such title or interest, Lessor herein named (and in case of any subsequent transfers then the grantor) shall be relieved from and after the date of such transfer or all liability as respects Lessor's obligations thereafter to be performed</u>, **provided that any funds in the hands of the Lessor or the then grantor at the time of such transfer, in which Lessee has an interest, shall be delivered to the grantee.**   The obligations contained in this Lease to be performed by Lessor shall, subject to aforesaid, be binding on Lessor's successors and assigns, <u>only during their respective periods of ownership</u>.

(FAC Ex. A ¶ 17 (emphasis added).)   Even read in the light most

favorable to the plaintiff, this paragraph does not hold a

successive landlord liable for breaches by the previous landlord

that occurred while the previous landlord owned the property.   It

also releases the previous landlord from liability only if "any

funds in the hands of the Lessor or the then grantor at the time

of such transfer, in which Lessee has an interest," are delivered

to the successive landlord.   <u>Id.</u>

United Way's acts that Red Cross seeks recovery for in

the Second and Third Causes of Action occurred while United Way

owned the property.   Red Cross has not asserted that Volen

assumed those liabilities or asserted any facts to suggest Volen

is liable for the injuries alleged in those claims.   Therefore,

Volen's motion dismiss must be granted, and the Second and Third

Causes of Action must be dismissed without prejudice.

///

C.    Preliminary Injunction

"'It frequently is observed that a preliminary injunction is an extraordinary and drastic remedy, one that should not be granted unless the movant, by a clear showing, carries the burden of persuasion.'" Mazurek v. Armstrong, 520 U.S. 968, 972 (1997) (quoting 11A Wright, A. Miller, & M. Kane, Federal Practice and Procedure § 2948 (2d ed.1995)). "To obtain a preliminary injunction, the moving party must demonstrate either (1) probable success on the merits and the possibility of irreparable injury, or (2) that serious questions are raised and the balance of hardships sharply favors the moving party. These are not separate tests, but are the ends of a continuum; the greater the relative hardship to the moving party, the less probability of success must be shown." Nat'l Ctr. for Immigrants Rights, Inc. v. I.N.S., 743 F.2d 1365, 1369 (9th Cir. 1984) (internal citations omitted). Under the first test, while the plaintiff does not have to show actual injury, the plaintiff must show a "strong threat of irreparable injury." Diamontiney v. Borg, 918 F.2d 793, 795 (9th Cir. 1999).

Red Cross is asking this court to enjoin conduct by Volen that Red Cross believes is aimed at forcing Red Cross to vacate the building or default on its lease, thereby terminating its option to purchase. Red Cross's option to purchase is worth a purported two million dollars; however, if its interest were purely monetary, this court would not be justified in granting equitable relief. Sampson v. Murray, 415 U.S. 61, 90 (1974). The harm, however, is not based on the value of the property, but on the interest in the real property that Red Cross seeks to

1    enforce.   Real property is unique and the loss of an interest in

2    real property cannot be compensated with money alone.   Sundance

3    Land Corp. v. Cmty. First Fed. Sav. & Loan Ass'n, 840 F.2d 653,

4    661-62 (9th Cir. 1988) ("Since the property at issue is unique,

5    [plaintiff's] legal remedy-i.e., damages-is inadequate.

6    [Plaintiff's] complaint therefore meets the equitable criteria

7    for stating a cause of action for injunctive relief.").

8           Here, Red Cross has occupied the building since 1988

9    with the anticipation of obtaining an ownership interest in it.

10   The location of the property undoubtedly has gained familiarity

11   in the community, which is pivotal to Red Cross's success.   (Van

12   Dooren Decl. ¶¶ 19, 23.)   Loss of its option to purchase an

13   interest in the property, therefore, would irreparably harm Red

14   Cross.

15          Even though Red Cross could suffer irreparable harm if

16   an injunction is not granted, "a party seeking injunctive relief

17   must show 'a relationship between the injury claimed in the

18   party's motion and the conduct asserted in the complaint.'"

19   Brown II v. Salinas Valley State Prison, No. 05-1423, 2007 WL

20   2782856, at *1 (N.D. Cal. Sept. 25, 2007) (quoting Devose v.

21   Herrington, 42 F.3d 470, 471 (8th Cir. 1994)).   In Devose, the

22   Eighth Circuit explained that a preliminary injunction could not

23   be granted "based on new assertions of mistreatment that [were]

24   entirely different from the claim raised and the relief

25   requested" in the complaint, even if the "new assertions might

26   support additional claims against the same" defendants.   Devose,

27   42 F.3d at 471.   Therefore, "[a] district court should not issue

28   an injunction when the injunction in question is not of the same

                                    24

character, and deals with a matter lying wholly outside the issues in the suit." <u>Kaimowitz v. Orlando</u>, 122 F.3d 41, 43 (11th Cir. 1997); <u>see also</u> <u>Camacho v. Jones</u>, No. 07-0812, 2007 WL 3342714, at *2 (D. Ariz. Nov. 7, 2007).

While some of Volen's conduct does appear to be aimed at forcing Red Cross to terminate the lease or default on it, that conduct is not related to Red Cross's claims against Volen. Even if Red Cross prevails on its claim to establish the validity of its option, a final judgment for Red Cross would not prevent Volen from returning to the very conduct that is the subject of this injunction. The court cannot enjoin conduct to protect the option when, at the end of the trial, the court could not render similar relief to protect against the very risk at issue now. <u>See</u> <u>Omega World Travel, Inc. v. Trans World Airlines</u>, 111 F.3d 14, 16 (4th Cir. 1997) ("The purpose of interim equitable relief is to protect the movant, during the pendency of the action, from being harmed or further harmed in the manner in which the movant contends it was or will be harmed through the illegality alleged in the complaint.").

The only statement about Volen's conduct in Red Cross's FAC appears in its requests for a declaratory judgment and an order compelling Volen to issue a short form memorandum of lease:

> The Red Cross seeks a declaration from this Court affirming the Red Cross's (a) option to purchase 48.87% of the Building, . . . and a pro rata share of the common areas (i.e., the parking lot and other areas surrounding the Building, . . . and (b) right to a "short form" memorandum of lease affirming the existence and viability of that option, for immediate recording. . . . <u>Such a declaration is necessary . . . to resolve disputes that have arisen and may continue to arise between the Red Cross and Volen over the disposition and use of the Building until the time</u>.

25

(FAC ¶¶ 71-72 (emphasis added).)  The allegation in the last
sentence, however, is not an affirmative request for relief.  A
memorandum of lease is simply a recordable document that provides
notice of the lease; it is not a remedy to determine the rights
and obligations of the parties or provide relief when one party
breaches the lease.  In the quoted language above, Red Cross also
requests the court to declare the validity of the option.  Red
Cross does not, however, make an equivalent request with respect
to the conduct at issue.  Therefore, the court does not have the
power to enjoin the conduct because Red Cross's complaint does
not contain a legal basis to complain about it.  See Kaimowitz,
122 F.3d at 43 (11th Cir. 1997) ("A district court should not
issue an injunction when the injunction . . . deals with a matter
lying wholly outside the issues in the suit.").

        At the heart of Red Cross's arguments to enjoin Volen's
conduct is an assumption that the conduct violates the terms of
the lease.  If Red Cross is correct that the conduct is a breach
of the lease, then Red Cross would suffer irreparable harm if it
lost its option because of the breach, and a request for a
preliminary injunction would be sufficiently related to a claim
for breach of the lease.  If Red Cross chooses to amend its
complaint, it is free to seek any preliminary relief, including a
temporary restraining order or preliminary injunction, based on
any newly asserted claims.  The court's equitable powers,
however, do not extend to implying a cause of action to achieve
an equitable result.  See Nagrampa v. MailCoups, Inc., 469 F.3d
1257, 1277 n.6 (9th Cir. 2006) ("The type of claim asserted in
the complaint dictates the nature of the relief that may be

1  afforded to the plaintiff."). Accordingly, the court must deny,

2  without prejudice, Red Cross's request for a preliminary

3  injunction because the conduct at issue lacks a sufficient nexus

4  to the injury alleged in the FAC.

5           IT IS THEREFORE ORDERED that:

6           (1)  Volen's motion to expunge be, and the same hereby

7  is, DENIED;

8           (2)  Red Cross's request for attorneys' fees

9  and costs in connection with defending the motion to expunge the

10 lis pendens be, and the same hereby is, DENIED;

11          (3)  Volen's motion to dismiss be, and the same hereby

12 is, GRANTED as to the Second and Third Causes of Action only;

13          (4)  Red Cross's motion for a preliminary injunction

14 be, and the same hereby is, DENIED;

15          Red Cross is given 30 days from the date of this order

16 to file an amended complaint consistent with this order.

17 DATED:  December 18, 2007

18

19  _____

20          WILLIAM B. SHUBB
           UNITED STATES DISTRICT JUDGE

21

22

23

24

25

26

27

28

                              27