1
2
3
4
5
6
7
8

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

----oo0oo----

AMERICAN NATIONAL RED CROSS, a
non-profit corporation created
by an act of Congress,

        Plaintiff,

   v.

UNITED WAY CALIFORNIA CAPITAL
REGION, a California
corporation; VOLEN PROPERTIES
10, L.L.C., a California
limited liability company; and
DOES 1-10, inclusive,

        Defendants.

_____/

AND RELATED COUNTERCLAIMS

_____/

NO. CIV. S-07-1236 WBS DAD

ORDER RE: SPECIAL MOTION
TO STRIKE

----oo0oo----

      Plaintiff, the Sacramento-Sierra Chapter of the

American National Red Cross ("Red Cross"), brought this action to

resolve disputes arising from its lease of and alleged option to

1

purchase an ownership interest in the property it leases from
defendant Volen Properties 10, L.L.C. ("Volen").  Volen had
purchased the property from the former lessor, defendant and
counter-plaintiff United Way California Capital Region ("United
Way").  Before the court is Red Cross's special motion to strike
United Way's First Amended Counterclaim pursuant to California's
anti-Strategic Lawsuits Against Public Participation
("anti-SLAPP") statute, Cal. Civ. Proc. Code § 425.16.

I.    Factual and Procedural Background

        Beginning in 1988, Red Cross leased a 26,099-square-
foot building located at 8928 Volunteer Lane in Sacramento, as
well as a pro rata share of the property's common areas
("property").  (Second Am. Compl. (SAC) Ex. A.)  In recognition
of Red Cross's contributions to the community, the original
lessor, O.K. and B, agreed to donate the property to Red Cross at
the end of the twenty-year lease.  (Id. Ex. B ("Agreement to
Donate").)  O.K. and B later sold the property to California
Center, which subsequently sold it to United Way on April 7,
1994.  (Id. at ¶¶ 17-18, Exs. C & D.)

        When California Center sold the property to United Way,
the parties executed a Second Amendment, which terminated the
Agreement to Donate and created, in Red Cross, an option to
purchase the property for $1.00 on April 30, 2010.  (Id. Ex. D.)
On July 1, 1996, United Way and Red Cross executed a Third
Amendment, which reduced Red Cross's lease from the entire two-
story building to only the first floor.  (Id. Ex. E at ¶ 2.1.)
Based on its square footage, the first floor comprises of exactly
48.87% of the building.  (Id. Ex. E at Ex. B.)  Red Cross's rent,

2

1    as well as its tax, maintenance, and utilities expenses, were

2    also reduced to 48.87% of their previous amounts.  (Id. at ¶¶

3    2.2-2.3.)

4           The Third Amendment also granted Red Cross the right,

5    until June 30, 2001, to reinstate its original leasehold interest

6    in the second floor.  (Id. at ¶¶ 3.1-3.2.)  If, however, Red

7    Cross did not reinstate its original leasehold interest on or

8    before June 30, 2001, the Third Amendment provided that its

9    option to purchase the property would automatically be reduced to

10   an option to purchase a 48.87% ownership interest in the

11   property.  (Id. at ¶ 3.5.)  Because Red Cross did not reinstate

12   its original leasehold interest within the allotted time, the

13   Third Amendment automatically reduced its option to purchase the

14   entire property to an option to purchase only a 48.87% share in

15   the property.  (Id.)

16          The Third Amendment also provided that, if United Way

17   sold the property before Red Cross reinstated its original

18   leasehold interest or June 30, 2001, Red Cross's lease would

19   terminate and Red Cross would be entitled to a 48.87% share in

20   the net proceeds of the sale.  (Id. at ¶ 4.)  The parties dispute

21   the legal effect of the Third Amendment for a sale that occurred

22   after June 30, 2001.

23          In 2006, United Way retained Grubb and Ellis Company

24   ("Grubb and Ellis") to list and broker a potential sale of the

25   property.  (Blumenfeld Decl. ¶ 6.)  In December 2006, Volen

26   allegedly offered to purchase the property from United Way, but

27   United Way rejected its offer.  (Volen Decl. ¶¶ 2, 5.)  After

28   Volen had made its initial offer, Red Cross allegedly continued

3

to inform Volen that its purchase of the property would be subject to Red Cross's option. (<u>Id.</u> at ¶ 5.)  Red Cross also allegedly contacted Grubb and Ellis to inform its agents that Red Cross had an option to purchase a 48.87% share in the property on April 30, 2010. (Blumenfeld Decl. ¶ 6.)  Volen maintained an interest in purchasing the property and made a second offer in April 2007.  While United Way did not accept that offer, the parties entered negotiations at that time.

Ultimately, United Way accepted Volen's third offer, which he made in June 2007. (Volen Decl. ¶ 8.)  When Red Cross learned that United Way intended to sell the property under the position that Red Cross no longer had a valid option, Red Cross filed this lawsuit on June 25, 2007 and sent a letter to Volen on July 9, 2007 that detailed its position about its option to purchase an ownership interest in the property. (Wilcox Decl. ¶ 3, Ex. L.)  Upon filing its lawsuit, Red Cross also recorded a Notice of Pendency of Action, alleging its right to purchase a 48.87% share in the property on April 30, 2010.

United Way sold the property on September 12, 2007 to APIP 220, L.L.C. ("APIP 220"),[1] which transferred it to Volen fourteen days later. (Pl.'s Req. for Judicial Notice in Supp. of Mot. for Summ. J. Exs. C, D.)  Red Cross subsequently amended its complaint, joining Volen as a defendant in this action.

In its Second Amended Complaint, Red Cross alleges

---

[1]   APIP 220 functioned solely as a 1031 exchange facilitator. (Volen Decl. ¶ 10.)  Red Cross named APIP 220 as a defendant in its original Complaint and First Amended Complaint, however, Red Cross did not name APIP 220 as a defendant in its Second Amended Complaint.

4

1  claims for 1) breach of contract against Volen--refusal to

2  provide a short form memorandum of lease recognizing Red Cross's

3  option; 2) breach of contract against United Way--refusal to

4  provide a tentative parcel map for Red Cross's approval; 3)

5  breach of contract against Volen--interference with quiet

6  enjoyment of property; 4) breach of contract against Volen--

7  excessive charges; 5) accounting against both defendants; 6)

8  money had and received against Volen; and 7) declaratory relief

9  against both defendants.

10          Based on Red Cross representatives' alleged statements

11  about the validity of its option after United Way's sale of the

12  property, United Way counterclaimed against Red Cross.  In its

13  First Amended Counterclaim, United Way alleges counterclaims for

14  1) breach of the covenant of good faith and fair dealing; 2)

15  intentional interference with a prospective economic advantage;

16  and 3) negligent interference with a prospective economic

17  advantage.  Pursuant to California's anti-SLAPP statute, Red

18  Cross now moves to strike United Way's First Amended

19  Counterclaim.[2]

20  II.  Discussion

21          A.    Timeliness of the Anti-SLAPP Motion

22          The California Legislature enacted its anti-SLAPP

23  statute, Cal. Civ. Proc. Code § 425.16, to "allow early dismissal

24  of meritless first amendment cases aimed at chilling expression

25  _____

26          [2]    In response to Red Cross's evidentiary objections to
   evidence United Way submitted, the court vacated the hearing on
   Red Cross's motion and held a hearing on the evidentiary
27  objections after the parties had the opportunity to address the
   objections.  After the hearing on the evidentiary objections, Red
28  Cross withdrew its objections.

through costly, time-consuming litigation." <u>Metabolife Int'l,</u>
<u>Inc. v. Wornick</u>, 264 F.3d 832, 839 (9th Cir. 2001).
"California's anti-SLAPP statute allows a defendant to move to
strike a plaintiff's complaint if it 'aris[es] from any act of
that person in furtherance of the person's right of petition or
free speech under the United States or California Constitution in
connection with a public issue.'" <u>Vess v. Ciba-Geigy Corp. USA</u>,
317 F.3d 1097, 1109 (9th Cir. 2003) (quoting Cal. Civ. Proc. Code
§ 425.16(b)(1)); <u>see also</u> <u>Briggs v. Eden Council for Hope &</u>
<u>Opportunity</u>, 19 Cal. 4th 1106, 1123 (1999) (defendant "need <u>not</u>
separately demonstrate that the statement concerned an issue of
public significance") (emphasis in original); <u>City of Cotati v.</u>
<u>Cashman</u>, 29 Cal. 4th 69, 78 (2002) ("The anti-SLAPP statute,
itself, treats complaints identically with cross-complaints.").
Pursuant to subsection 425.16(f), a party may file a special
motion to strike "within 60 days of the service of the complaint
or, in the court's discretion, at any later time upon terms it
deems proper." Cal. Civ. Proc. Code § 425.16(f).

        Although titled a "special motion to strike," federal
courts have analogized anti-SLAPP motions to Federal Rule of
Civil Procedure 12(b)(6) motions to dismiss and Rule 56 motions
for summary judgment:

>        If a defendant makes a special motion to strike based on
> alleged deficiencies in the plaintiff's complaint, the
> motion must be treated in the same manner as a motion
> under Rule 12(b)(6) except that the attorney's fee
> provision of § 425.16(c) applies. If a defendant makes
> a special motion to strike based on the plaintiff's
> alleged failure of proof, the motion must be treated in
> the same manner as a motion under Rule 56 except that
> again the attorney's fees provision of § 425.16(c)
> applies.

Rogers v. Home Shopping Network, Inc., 57 F. Supp. 2d 973, 983
(C.D. Cal. 1993); accord Condit v. Nat'l Enquirer, Inc., 248 F.
Supp. 2d 945, 953, 953 n.3 (E.D. Cal. 2002).

While "[m]otions to strike a state law claim under
California's anti-SLAPP statute may be brought in federal court,"
the Erie doctrine[3] dictates which of the statute's subdivisions
apply in federal court.  Vess, 317 F.3d at 1109 (citations
omitted).  Specifically, the Ninth Circuit has held that
subsection (b), addressing the availability of the special motion
to strike,[4] and subsection (c), providing attorney fees for the

_____

[3]     Under Erie, if a procedural state law directly
conflicts with a valid Federal Rule of Civil Procedure, the
federal rule controls.  Metabolife Int'l, Inc., 264 F.3d at 845.
"In the absence of a 'direct collision,' the court must make the
'typical, relatively unguided Erie Choice,'" which requires the
court to balance "the state interest in its procedural rule with
the twin purposes of the Erie doctrine, 'discouragement of
forum-shopping and avoidance of inequitable administration of the
laws.'"  Id. (citations omitted).

[4]     Subsection (b) provides:

(1) A cause of action against a person arising from any
act of that person in furtherance of the person's right
of petition or free speech under the United States or
California Constitution in connection with a public issue
shall be subject to a special motion to strike, unless
the court determines that the plaintiff has established
that there is a probability that the plaintiff will
prevail on the claim.
(2) In making its determination, the court shall consider
the pleadings, and supporting and opposing affidavits
stating the facts upon which the liability or defense is
based.
(3) If the court determines that the plaintiff has
established a probability that he or she will prevail on
the claim, neither that determination nor the fact of
that determination shall be admissible in evidence at any
later stage of the case, or in any subsequent action, and
no burden of proof or degree of proof otherwise
applicable shall be affected by that determination in any
later stage of the case or in any subsequent proceeding.

party prevailing on the motion,[5] do not directly conflict with the Federal Rules and, therefore, apply in federal court. United States ex rel. Newsham v. Lockheed Missiles & Space Co., 190 F.3d 963, 972-73 (9th Cir. 1999).  On the other hand, the Ninth Circuit has concluded that the "discovery-limiting aspects" of subsections (f) and (g)[6] "collide with the discovery-allowing aspects of Rule 56," therefore do not apply in federal court. Metabolife Int'l, Inc., 264 F.3d at 846; see also Verizon Del., Inc. v. Covad Commc'ns Co., 377 F.3d 1081, 1091 (9th Cir. 2004) (holding that Rule 15's liberal amendment standard allows

---

Cal. Civ. Proc. Code § 425.16(b).

[5]     Subsection (c) provides:

In any action subject to subdivision (b), a prevailing defendant on a special motion to strike shall be entitled to recover his or her attorney's fees and costs.  If the court finds that a special motion to strike is frivolous or is solely intended to cause unnecessary delay, the court shall award costs and reasonable attorney's fees to a plaintiff prevailing on the motion, pursuant to Section 128.5.

Cal. Civ. Proc. Code § 425.16(c).

[6]     Subsections (f) and (g) provide:

(f) The special motion may be filed within 60 days of the service of the complaint or, in the court's discretion, at any later time upon terms it deems proper.  The motion shall be scheduled by the clerk of the court for a hearing not more than 30 days after the service of the motion unless the docket conditions of the court require a later hearing.
(g) All discovery proceedings in the action shall be stayed upon the filing of a notice of motion made pursuant to this section.  The stay of discovery shall remain in effect until notice of entry of the order ruling on the motion. The court, on noticed motion and for good cause shown, may order that specified discovery be conducted notwithstanding this subdivision.

Cal. Civ. Proc. Code § 425.16(f)-(g).

plaintiff to file an amended complaint prior to the district court's ruling on the anti-SLAPP motion, even though such a rule conflicts with California's anti-SLAPP statute).

The Ninth Circuit has not addressed whether the sixty-day limit in subsection (f) controls when a party may file an anti-SLAPP motion. While most district courts have applied California's deadline, none of the courts addressed whether the _Erie_ doctrine requires the court to apply the federal or state deadline.[7] _Moser v. Encore Capital Group, Inc._, No. 04-2085, 2007 WL 2481501, at *1 (S.D. Cal. Aug. 28, 2007); _Chevron Global Tech. Servs. Co. v. Little_, No. 06-3157, 2007 WL 2021804, at *3-4 (N.D. Cal. July 10, 2007); _Globetrotter Software, Inc. v. Elan Computer Group, Inc._, 63 F. Supp. 2d 1127, 1129 (N.D. Cal. 1999); _see also_ _New.Net, Inc. v. Lavasoft_, 356 F. Supp. 2d 1090, 1100 n.4 (C.D. Cal. 2004) (explaining that, based on the facts of the case, subsection (f)'s sixty-day deadline did not implicate the _Erie_ doctrine). _But see_ _Flores v. Emerich & Fike_, No. 05-291, 2006 WL 2536615, at *7 (E.D. Cal. Aug. 31, 2006) (applying Rules 15(a) and 6(e) to conclude that defendants timely filed their anti-SLAPP motion).

If the _Erie_ doctrine dictates that federal law controls when a party may file an anti-SLAPP motion in federal court, the

_____

[7]    In dicta, a district court in this circuit explained that the fact subsection (f) "permits a special motion to strike to be filed within sixty days of service of the complaint" does not conflict with Rule 56 because "Rule 56 permits a defendant to file a motion for summary judgment immediately upon service of the complaint." _Rogers v. Home Shopping Network, Inc._, 57 F. Supp. 2d 973, 982 n.3 (C.D. Cal. 1999). The _Rogers_ court did not, however, address the potential conflict when an anti-SLAPP motion is filed after subsection (f)'s sixty-day deadline or balance the state and federal interest under the _Erie_ doctrine.

court would look to Rule 12(b)(6) to determine deadlines for motions akin to motions to dismiss and would likewise look to Rule 56 when dealing with motions akin to those for summary judgment.[8]  See United States ex rel. Newsham, 190 F.3d at 972 ("We conclude that [subsections (b) and (c)] and Rules 8, 12, and 56 'can exist side by side . . . each controlling its own intended sphere of coverage without conflict.'").

In this case, Red Cross's motion is akin to a Rule 56 motion for summary judgment because both sides submitted, and this court relied upon, affidavits and evidence outside the pleadings.  See Anderson v. Angelone, 86 F.3d 932, 934 (9th Cir. 1996) ("A motion to dismiss . . . must be treated as a motion for summary judgment . . . if either party . . . submits materials outside the pleadings in support or opposition to the motion, and if the district court relies on those materials.").  Therefore, this court need not determine whether federal or state law controls the timing of Red Cross's anti-SLAPP motion because Red Cross's motion is timely under either federal or state law.  See Fed. R. Civ. P. 56(a) (allowing a party to move for summary judgment "any time after: (1) 20 days have passed from commencement of the action; or (2) the opposing party serves a motion for summary judgment"); Cal. Civ. Proc. Code § 425.16(f) (allowing a party to file an anti-SLAPP motion "within 60 days of the service of the complaint or, in the court's discretion, at

---

[8]     United Way mistakenly argues that Red Cross's motion is untimely under Rule 12(f), which requires a party to file a motion to strike before filing a responsive pleading.  While an anti-SLAPP motion shares a similar title as a Rule 12(f) motion to strike, federal courts have looked exclusively to Rules 12 and 56 to decide anti-SLAPP motions.

1  any later time upon terms it deems proper").

2      B.   Merits of the Anti-SLAPP Motion

3          "A court considering a motion to strike under the

4  anti-SLAPP statute must engage in a two-part inquiry." Vess v.

5  Ciba-Geigy Corp. USA, 317 F.3d 1097, 1110 (9th Cir. 2003).

6  "'First, a defendant "must make an initial prima facie showing

7  that the plaintiff's suit arises from an act in furtherance of

8  the defendant's rights of petition or free speech."'" Zamani v.

9  Carnes, 491 F.3d 990, 995 (9th Cir. 2007) (citations omitted).

10 If a defendant satisfies the first prong, the burden then shifts

11 to the plaintiff to "'"demonstrate a probability of prevailing on

12 the challenged claims."'" Id. (citations omitted).

13         With respect to the first prong, an "'act in

14 furtherance of a person's right of petition or free speech'

15 includes . . . any written or oral statement or writing made in

16 connection with an issue under consideration or review by a . . .

17 judicial body . . . " Cal. Civ. Proc. Code § 425.16(e).

18 "[C]ommunications in connection with anticipated litigation are

19 considered to be under consideration or review by a . . .

20 judicial body." Neville v. Chudacoff, 160 Cal. App. 4th 1255,

21 1263 (2008) (citations and internal quotations omitted).  To

22 "arise from" the defendant's right of petition or free speech,

23 "the defendant's act underlying the plaintiff's cause of action

24 must itself have been an act in furtherance of the right of

25 petition or free speech." City of Cotati, 29 Cal. 4th at 78

26 (citation omitted) (emphasis in original).  "In deciding whether

27 the 'arising from' requirement is met, a court considers 'the

28 pleadings, and supporting and opposing affidavits stating the

facts upon which the liability or defense is based.'"  <u>Id.</u> at 79

(quoting Cal. Civ. Proc. Code § 425.16(b)).  To meets its burden,

the "defendant need not show that plaintiff's suit was brought

with the intention to chill defendant's speech; the plaintiff's

'intentions are ultimately beside the point.'"  <u>Bosley Med.</u>

<u>Inst., Inc. v. Kremer</u>, 403 F.3d 672, 682 (9th Cir. 2005)

(citation omitted).

          United Way's counterclaims are based solely on

statements Red Cross representatives allegedly made to Volen and

Grubb and Ellis[9] in which the representatives asserted that Red

Cross's option to purchase an ownership interest in the property

would survive United Way's sale of the property.  In each of its

three counterclaims, United Way alleges that Red Cross

"interfered with United Way's negotiations with APIP 220," which

United Way alleges began in 2007.  (First Am. Countercl. ¶¶ 23,

26, 30, 34.)  Bart Volen's declaration reveals that these

negotiations began in April 2007 when Bart Volen contacted Grubb

and Ellis Company to express his continued interest in purchasing

_____

          [9]   United Way's First Amended Counterclaim refers
exclusively to Red Cross's interference with United Way's
negotiations with APIP 220, which served solely as the 1031
exchange facilitator for United Way's sale of the property to
Volen.  (Trost Decl. ¶ 5.)  United Way's supporting affidavits
reveal that its counterclaims are actually based on statements
Red Cross representatives made to Volen's owner, Bart Volen.
While the First Amended Counterclaim does not mention statements
Red Cross representatives allegedly made to Grubb and Ellis, the
court will assume that any such statements made to that company
during the 2007 negotiations come within Untied Way's allegation
that Red Cross interfered with these negotiations.  (<u>See</u> Volen
Decl. ¶¶ 5, 6, 9; Blumenfeld Decl. ¶ 6 (stating that Red Cross
representatives informed Grubb and Ellis that its option would
survive United Way's sale of the property).)

12

the property.[10]   Therefore, the First Amended Counterclaim

applies to any statements Red Cross made beginning in April 2007

and ending on September 12, 2007, when the negotiations

culminated in a purchase agreement.  Because Red Cross filed its

lawsuit on June 25, 2007, the First Amended Counterclaim applies

to statements Red Cross made before and after it filed the

instant action.[11]

Counterclaims based on statements Red Cross

representatives made after it initiated this lawsuit clearly

arise from Red Cross's right to petition because the alleged

statements assert the validity of the very right Red Cross seeks

to establish in this lawsuit.  United Way cannot show a

---

[10]   While Bart Volen and Blumenfeld's declarations
reference statements Red Cross representatives allegedly made in
2006, these statements are beyond the temporal reach of United
Way's counterclaims.  Even if United Way amends its First Amended
Counterclaim, the court doubts that United Way could allege
legally cognizable counterclaims based on the alleged 2006
statements.  (See Volen Decl. ¶¶ 4, 5 (explaining that the Red
Cross representatives allegedly asserted the validity of Red
Cross's option after he had made an offer to purchase the
property from United Way and that United Way rejected that offer)
(emphasis added)); see generally Reeves v. Hanlon, 33 Cal. 4th
1140, 1152 (2004) ("[A] plaintiff seeking to recover for
interference with prospective economic advantage must also plead
and prove that the defendant engaged in an independently wrongful
act in disrupting the relationship.  In this regard, 'an act is
independently wrongful if it is unlawful, that is, if it is
proscribed by some constitutional, statutory, regulatory, common
law, or other determinable legal standard.'"); Badie v. Bank of
Am., 67 Cal. App. 4th 779, 796 (1998) ("The essence of the good
faith covenant is objectively reasonable conduct.").

[11]   Despite United Way's assertion that its counterclaims
are limited to prelitigation statements, United Way's discovery
requests also suggest that United Way did not intend to limit its
First Amended Counterclaim to prelitigation statements.  (See
Wilcox Decl. Ex. B at ## 4, 6, 8) (requesting documents
reflecting any communications between Red Cross and APIP 220 or
Volen "at any time prior to UNITED WAY's sale of the real
property . . . .").

13

1    likelihood of success on the merits of such counterclaims because

2    Red Cross's statements are subject to the litigation privilege,

3    Cal. Civ. Code § 47.  <u>See</u> <u>Oei v. N. Star Capital Acquisitions,</u>

4    <u>L.L.C.</u>, 486 F. Supp. 2d 1089, 1099 (C.D. Cal. 2006) ("To invoke

5    the privilege, the party claiming it must show that the

6    communication at issue was '(1) made in judicial or

7    quasi-judicial proceedings; (2) by litigants or other

8    participants authorized by law;[12] (3) to achieve the objects of

9    the litigation; and (4) that [it has] some connection or logical

10   relation to the action.'") (citations omitted) (alterations in

11   original); <u>Neville v. Chudacoff</u>, 160 Cal. App. 4th 1255, 1266

12   (2008) ("To be privileged under section 47, a statement must be

13   'reasonably relevant' to pending or contemplated litigation.");

14   <u>Rothman v. Jackson</u>, 49 Cal. App. 4th 1134, 1140 (1996) ("The

15   privilege applies to any publication or other communication . . .

16   whether or not the publication is made in the courtroom or in

17   court pleadings, and whether or not any function of the court or

18   its officers is involved."); <u>Pac. Gas & Elec. Co. v. Bear Stearns</u>

19   <u>& Co.</u>, 50 Cal. 3d 1118, 1132-33 (1990) ("The policy of

20   encouraging free access to the courts is so important that the

21   litigation privilege extends beyond claims of defamation to

22   claims of . . . interference with contract and prospective

23   economic advantage. . . .  In fact, the privilege applies to any

24   action except one for malicious prosecution.") (citations

25   omitted).

26   _____

27       [12]    For purposes of its analysis, the court assumes that
     any statements United Way alleges Red Cross's representatives
     made were made on behalf of Red Cross because United Way alleges
28   its counterclaims against only Red Cross.

14

1        Taken together, the anti-SLAPP statute and litigation
2   privilege ensure that individuals cannot be sued, let alone be
3   liable, for stating good faith legal positions in pending
4   lawsuits.  See Neville, 160 Cal. App. 4th at 1263 n.7 ("[While]
5   'the two statutes are not substantively the same,' . . . [i]f an
6   allegedly defamatory statement is privileged under section 47,
7   then a plaintiff could not show a likelihood of success on the
8   merits, the second step in the anti-SLAPP inquiry.") (citations
9   omitted).  Accordingly, the court will grant Red Cross's anti-
10  SLAPP motion to strike United Way's counterclaims based on any
11  statements Red Cross representatives made about the validity of
12  its option after Red Cross initiated this lawsuit.

13       As discussed above, the anti-SLAPP statute also extends
14  to "communications in connection with anticipated litigation."
15  Id. at 1263.  A prelitigation statement is made in anticipation
16  of litigation if it "'is made in connection with a proposed
17  litigation that is "contemplated in good faith and under serious
18  consideration."'"  Blanchard v. DIRECTV, Inc., 123 Cal. App. 4th
19  903, 919 (2004) (citations omitted).  In his affidavit, Red
20  Cross's Assistant General Counsel, William F. Causey, states
21  that, beginning in February 2007, Red Cross "seriously
22  anticipated litigation against United Way, and believed that its
23  right to be protected in that litigation were (and are) valid,
24  and that the contemplated litigation would be brought in good
25  faith."  (Causey Decl. ¶ 2.)  Causey further explains that, "[b]y
26  early April 2007, the Red Cross expected that it would file
27  litigation against United Way if negotiations with United Way
28  were not successful."  (Id.)

1    United Way has not proffered, nor is the court aware

2    of, any reason to doubt that, beginning in February 2007, Red

3    Cross was anticipating filing litigation in good faith.  Red

4    Cross representatives' statements asserting the validity of its

5    option also clearly arise from Red Cross's right to petition to

6    establish that property right.  Therefore, because any statements

7    about the validity of Red Cross's option made between February

8    2007 and the date Red Cross filed this lawsuit were made while

9    Red Cross anticipated filing litigation to protect its option,

10   such statements are subject to the anti-SLAPP statute.

11   If a "statement is made with a good faith belief in a

12   legally viable claim and in serious contemplation of litigation,

13   then the statement is sufficiently connected to litigation and

14   will be protected by the litigation privilege." Blanchard, 123

15   Cal. App. 4th at 919 (citations omitted); see also id. ("If it

16   applies, the privilege is absolute."); see also Rubin v. Green, 4

17   Cal. 4th 1187, 1194 (1993) ("[C]ommunications with 'some

18   relation' to an anticipated lawsuit are [] within the

19   privilege."); see also id. (citing cases finding that the

20   privilege extends to "'potential court actions,'" "'preliminary

21   conversations and interviews,'" and "'steps taken prior' to

22   judicial proceedings") (citations omitted).  Here, Red Cross's

23   representatives' statements asserting the validity of its option

24   are clearly connected to the litigation it filed to establish

25   that its option would, and did, survive United Way's sale of the

26   property.  See Neville v. Chudacoff, 160 Cal. App. 4th 1255, 1263

27   (2008) (finding that letters written more than four months before

28   plaintiff initiated legal action were made in contemplation of

16

1 | immediate legal action).

2 |       Accordingly, because the litigation privilege bars

3 | United Way's counterclaims based on statements Red Cross

4 | representatives allegedly made between February 2007 and the date

5 | it filed its lawsuit, United Way cannot prove a likelihood of

6 | success on the merits and the court must grant Red Cross's anti-

7 | SLAPP motion to strike counterclaims based on those statements.

8 |       IT IS THEREFORE ORDERED that Red Cross's anti-SLAPP

9 | special motion to strike United Way's First Amended Counterclaim

10 | be, and the same hereby is, GRANTED.

11 | DATED:  May 28, 2008

12 |

13 | _____
WILLIAM B. SHUBB

14 | UNITED STATES DISTRICT JUDGE

17